## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

CHARLES R. TURY,                    )
                                    )
      Plaintiff,                 )
                                    )
v.                                  )          CIVIL ACTION NO. 5:06-0607
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
      Defendant.                 )

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the Plaintiff's

Motion for Summary Judgment (Doc. No. 9.) and the Defendant's Motion for Judgment on the

Pleadings. (Doc. No. 13.) Both parties have consented in writing to a decision by the United States

Magistrate Judge. (Doc. Nos. 5-6.)

The Plaintiff, Charles R. Tury (hereinafter referred to as "Claimant"), filed an application for

DIB on August 6, 2001, (protective filing date), alleging disability as of February 22, 2001, due to

back problems, neck problems, cervical fusion surgery, fractured vertebra in the mid back, high liver

enzymes, right-sided blindness, thyroid problems, depression, anxiety, and arthritis in his knees,

neck, back, and shoulders. (Tr. at 63-65, 86, 93, 308) The claim was denied initially and upon

reconsideration. (Tr. at 44-46, 51-53.) On February 19, 2002, Claimant requested a hearing before

an Administrative Law Judge (ALJ). (Tr. at 54.) The hearing was held on May 20, 2002, before the

Honorable Arthur Conover. (Tr. at 261-95.) By decision dated September 25, 2002, the ALJ

determined that Claimant was not entitled to benefits. (Tr. at 21-28.) The ALJ's decision became the final decision of the Commissioner on July 23, 2003, when the Appeals Council denied Claimant's request for review. (Tr. at 5-10.) On September 23, 2003, Claimant sought review in this District Court of the administrative decision. (Doc. No. 1, Tury v. Barnhart, Civil Action No. 2:03-cv-2196.) By Judgment Order entered August 12, 2004, the case was remanded for further administrative proceedings, namely for consideration of additional evidence that Claimant had submitted to the Appeals Council. (Doc. Nos. 7-8, Tury v. Barnhart, Civil Action No. 2:03-cv-2196.)

While his federal appeal was pending, Claimant filed a second application for DIB on October 2, 2003, (protective filing date), again alleging disability as of February 22, 2001, due to back and neck problems, "neck fusion from surgery, fractured vertebra in mid-back. . . arthritic knees, high liver enzymes, [and] bulging discs in low back." (Tr. at 403-06, 429.) The claim was denied initially and upon reconsideration. (Tr. at 383-85, 390-92.) On February 10, 2004, Claimant requested another hearing before an ALJ. (Tr. at 393.) The hearing was held on February 15, 2005, before the Honorable Arthur Conover. (Tr. at 329-52.) By decision dated May 24, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 307-17.) The ALJ's decision became the final decision of the Commissioner on June 7, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 296-98.) On August 4, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

2

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities.

4

20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 309.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease status post discectomy and fusion at C4-5 through C5-6, a back impairment with L2 anterior defect, right sided blindness since birth, left carpal tunnel syndrome, and degenerative joint disease of the knees, which were severe impairments. (Tr. at 311-12.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 312.) The ALJ then found that Claimant had a residual functional capacity for a significant range of sedentary work with the following limitations:

> [L]ift 20 pound occasionally and 10 pounds frequently; avoid frequent overhead reaching of the arms; avoid frequent pushing/pulling with the arms; only occasional lateral up-and-down movements of the neck; occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, and crouching; no kneeling or crawling; occasional fingering with the left nondominant hand; avoid all exposure to vibration and hazardous work sites; low stress work environment; and avoid large crowds in the workplace.

(Tr. at 314.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 314.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearings, the ALJ concluded that Claimant could perform jobs such as a clerk, surveillance system monitor, and order clerk, at the sedentary level of exertion. (Tr. at 315.) On this basis, benefits were denied. (Tr. at 316-17.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict

6

were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on April 10, 1956, and was 49 years old at the time of the second administrative hearing. (Tr. at 63, 308, 403.) Claimant had a twelfth grade education. (Tr. at 92, 308, 435.) In the past, he worked as a chemical operator. (Tr. at 87, 308, 338, 438-39.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to give proper weight to the opinions of Claimant's treating physicians, Dr. Manuel Franco and Dr. Timothy Thistlewaite, (2) erred in assessing Claimant's pain and credibility, and  (3) erred in considering the VE's testimony. (Pl.'s Br. at 7-10.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 19-29.)

7

1. <u>Treating Source Opinions</u>.

Claimant first argues that the ALJ failed to evaluate properly the opinions of his treating physicians, Dr. Franco and Dr. Thistlewaite. (Pl.'s Br. at 6-8.) Claimant asserts that the ALJ completely disregarded Dr. Franco's physical residual functional capacity assessment, dated February 8, 2005, and Dr. Thistlewaite's mental residual functional capacity assessment, dated January 31, 2005. (<u>Id.</u>) Regarding Dr. Franco's assessment, the Commissioner asserts that his treatment records and progress reports largely document Claimant's "statements of pain, rather than objective, findings of physical functional limitations," and therefore, the ALJ properly discredited his assessment. (Def.'s Br. at 19-20.) The Commissioner further asserts that Dr. Franco's opinion was not consistent with the other objective medical evidence of record and conflicted with the opinions of three state agency physicians. (<u>Id.</u> at 20-22.) Concerning Dr. Thistlewaite, the Commissioner asserts that the ALJ correctly found that his opinion was wholly unsupported by his own progress notes, which did not demonstrate objective findings of significant symptomology. (<u>Id.</u> at 22.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." <u>Id.</u> §§ 404.1527(d)(2), 416.927(d)(2).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. <u>See</u> 20 C.F.R. §§ 404.1527(d)(2),

8

416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527, 416.927. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2)  provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under §§ 404.1527(d)(2)(ii) and

416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

    A.    <u>Dr. Franco</u>.

The record indicates that Claimant sought treatment from Dr. Franco from April 27, 2001, through February 8, 2005. (Tr. at 175-87, 230, 240-49, 251-54, 558-65, 599-614, 643-64.) Dr. Franco's diagnoses included, *inter alia*, low back strain, right shoulder bursitis, chronic neck and shoulder pain, hypothyroidism, fatigue, abnormal liver functions tests, degenerative joint disease of the spine and knees, osteoarthritis of the knees, and depression. (Tr. at 175-87.) On February 21, June 4, and July 16, 2002, Claimant complained to Dr. Franco of low back and neck pain. (Tr. at 243-45.) On June 4 and July 16, 2002, Claimant demonstrated limitations in his lumbar range of motion and Dr. Franco recommended an MRI. (Tr. at 243-44.) On July 17, 2002, an MRI revealed a disc bulge at L3-4, with associated hypertrophic bony change, but no evidence of NHP or high central canal stenosis. (Tr. at 260.) Dr. Franco completed a Medical Assessment of Ability to Do Work-Related Activities on November 7, 2002, in which he opined that Claimant had limitations in lifting/carrying and standing/walking, but did not specify how much Claimant can lift/carry or how long he can stand/walk. (Tr. at 251-54.) However, Dr. Franco opined that Claimant's ability to sit was not affected by his physical conditions. (<u>Id.</u> at 252.) Dr. Franco opined that Claimant had limitations in pushing and pulling and seeing, as he is legally blind in the right eye. (Tr. at 253.) He further opined

10

that Claimant was unable to climb due to degenerative joint disease of the spine and knees, and had environmental restrictions including heights, moving machinery, chemicals, and fumes. (Id.)

In a general letter dated October 11, 2001, Dr. Franco diagnosed Claimant as suffering from degenerative joint disease of the knees and cervical spine. (Tr. at 564.) He noted that Claimant's work activities as a pipefitter at Dupont involved walking several hours a day, carrying pipes, and climbing stairs, and that these activities "worsened his discomfort to both knees" and that he recently had a "hard time walking." (Id.) Dr. Franco noted that Claimant chronically takes Celebrex 200 mg daily which partially alleviates his pain. (Id.) He indicated that Claimant's other medical problems include "a compression fracture of thoracic vertebra, low back strain, blind right eye, hypothyroidism, and depression." (Id.) On August 1, 2002, Dr. Franco updated his diagnoses to include shoulder pain and cervicalgia. (Tr. at 559.) Dr. Franco completed a Parking Application for Disabled Persons on January 8, 2003, on which he indicated that Claimant's ability to walk due to an arthritic, neurological, or orthopedic condition was severely limited. (Tr. at 560.)

From November 19, 2002, through January 31, 2005, Claimant continued to complain of chronic back, neck, and knee pain. (Tr. at 599-614, 643-64.) Dr. Franco noted that Claimant generally had no new complaints, felt "ok," looked well, and had good muscle tone. (Tr. at 599, 602, 604-06, 608, 610, 613, 655-56, 658.) On January 8, 2003, he noted that Claimant had difficulty elevating his arms above his horizontal line and complained of numbness to his fingers. (Tr. at 612.) On October 29, 2003, Claimant complained of fatigue. (Tr. at 602.) His physical exam revealed paresthesia and a positive Tinel's sign of his left arm. (Tr. at 602.) Dr. Franco completed another Physical Assessment of Ability to Do Work-Related Activities on February 8, 2005, in which he opined that Claimant was able to perform less than sedentary level work. (Tr. at 643-46.) Specifically, he opined that Claimant was able to lift/carry only five pounds due to degenerative arthritis of his neck, lumbar

11

spine, and both knees. (Tr. at 643.) Due to degenerative arthritis of his cervical spine, lumbosacral spine, and both knees, Dr. Franco opined that Claimant was able to walk four hours out of an eight hour workday, limited to fifteen minute increments without interruption. (Tr. at 644.) Dr. Franco further opined that Claimant should never climb, balance, stoop, crouch, kneel, or crawl, and should avoid heights, moving machinery, chemicals, and vibration. (Tr. at 645.) He also opined that the degenerative disease to Claimant's neck, which resulted in pain to his neck and shoulders, affected his ability to push and pull. (Id.) Dr. Franco noted that Claimant was legally blind in his right eye. (Id.)

The ALJ considered Dr. Franco's progress notes and assessments in his decision regarding Claimant's application for benefits. (Tr. at 311, 313, 316.) In his decision, the ALJ noted that Claimant treated with Dr. Franco and summarized his assessment of February 8, 2005. (Tr. at 311.) The ALJ determined however, that Dr. Franco's assessment was not supported by the objective medical evidence of record, and appeared "significantly influenced by unverifiable complaints of the [C]laimant." (Tr. at 313.) Despite Claimant's complaints of neck and back pain, the ALJ noted that following the discectomy and fusion at C4-5 through C5-6, x-rays of the cervical spine demonstrated satisfactory appearance of the cervical spine superimposed on degenerative disc disease. (Tr. at 159-60, 313.) An EMG of Claimant's upper left extremity on September 3, 2002, was normal with no evidence of carpal tunnel syndrome. (Tr. at 127, 313.) Regarding the lumbar spine, an MRI of July 3, 2000, revealed irregularity at L2 vertebral body, but no herniation of disc material or spinal canal stenosis. (Tr. at 117, 313.) Although the ALJ did not specifically address the MRI of July 17, 2002, which revealed a disc bulge at L3-4, with associated hypertrophic bony change, there was no evidence of high central canal stenosis. (Tr. at 260.) This piece of evidence does not add anything different to the evidence specifically considered and weighed by the ALJ because, other than one

occurrence of decreased lumbar motion prior to the MRI, there is no evidence of any functional limitations resulting from the disc bulge. See Hall v. Astrue, 5:05-cv-00508 (S.D. W.Va. March 26, 2007) (concluding "that so long as the evidence from another non-medical source does not add anything different to evidence already weighed and evaluated by the ALJ, then the ALJ does not err by failing to weigh that evidence. This is because the disregarded evidence would be merely cumulative, not relevant, and would not trigger the ALJ's duty to discuss under Gordon [v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984)]."). Moreover, Dr. Franco's progress notes following the MRI do not reference any limitations in lumbar motion. Despite Claimant's complaints of bilateral knee pain, x-rays on August 11, 2000, revealed only mild degenerative changes with slight loss of joint space in the medial compartment. (Tr. at 130-31, 313.) The ALJ acknowledged Claimant's limitations in raising his arms in his residual functional capacity assessment, finding that Claimant should avoid frequent overhead reaching of the arms. (Tr. at 314.)

The ALJ also noted that Dr. Franco's assessment conflicted with the opinions of three state agency physicians, who opined that Claimant retained the residual functional capacity to perform work at the light exertional level. (Tr. at 188-96, 197-205, 311-12, 566-74, 615-23.) These physicians opined that Claimant was limited visually, due to being legally blind in his right eye, and was occasionally subject to postural limitations. (Tr. at 190-91, 199, 312, 569, 617-18.) Additionally, the state agency physicians imposed environmental limitations, opining that he should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, heights, and extreme cold. (Tr. at 192, 201, 312, 570, 619.) At least one state agency physician opined that Claimant's subjective complaints of pain were partially credible, but magnified." (Tr. at 202.) After reviewing the objective medical evidence of record, the ALJ found the state agency physicians' opinions to be credible, and that Claimant's reported symptoms appeared "magnified in light of the objective medical findings." (Tr.

at 312.) Based on the foregoing, the undersigned finds that the substantial medical evidence of record does not support Dr. Franco's assessment and that the ALJ properly discredited his opinions. Accordingly, the ALJ's decision that Dr. Franco's February 8, 2005, assessment was not supported by the objective medical evidence of record and was based on Claimant's unverified subjective complaints, is supported by substantial evidence.

      B.    <u>Dr. Thistlewaite</u>.

The medical record indicates that Claimant sought treatment from Dr. Thistlewaite from June 26, 2000, through January 6, 2004. (Tr. at 171-74, 250, 552-57, 590-98.) On June 26, 2000, Claimant returned for treatment after having been absent for over one year. (Tr. at 174.) Claimant reported a definite improvement in his mood since he was last treated, relating a lot of his prior problems to difficulties he had in his first marriage. (<u>Id.</u>) He reported that he felt much better since his marriage ended but that he was somewhat anxious and irritable. (<u>Id.</u>) Dr. Thistlewaite diagnosed major depression, recurrent, with only mild symptoms of depression, and noted that he had anxious symptoms consistent with GAD. (<u>Id.</u>) Claimant was prescribed Effexor. (<u>Id.</u>) On August 8, 2000, Claimant reported doing well on medication and Dr. Thistlewaite opined that his depression and anxiety appeared stable. (Tr. at 173.) On July 3, 2001, Claimant reported that he dropped out of treatment because he was functioning well for three months. (Tr. at 172.) However, he reported a slight set back the last month due to the death of his father. (<u>Id.</u>) He was again prescribed Effexor. (<u>Id.</u>) Claimant reported on August 15, 2001, that the medication greatly increased his mood. (Tr. at 171.) Dr. Thistlewaite noted that his anxiety was stable. (<u>Id.</u>)

On November 12, 2001, Claimant again reported doing well and Dr. Thistlewaite noted that his depression remained in remission. (Tr. at 597.) However, on May 13, 2002, although Claimant reported doing well with his medication, he reported some recent difficulty with managing family

14

issues and his own personality and coping style. (Tr. at 596.) Dr. Thistlewaite diagnosed GAD, noted

that his depression remained in remission, and continued him on Effexor. (Id.) On October 28, 2002,

Claimant reported a decreased mood with significant stressors from his physical condition and

personal issues. (Tr. at 595.) Claimant reported that his mood fluctuated, that his concentration was

poor to fair, and that he felt anxious, depressed, irritable, and angry. (Id.) His Effexor was increased

in dosage. (Id.) On December 9, 2002, Claimant reported doing well with the increased medication.

(Tr. at 594.) Dr. Thistlewaite noted that his depression was stabilizing. (Id.) From February 10, 2003,

through July 21, 2004, Claimant reported that he was doing well with his medication and that he was

functioning fairly well. (Tr. at 590-93, 642.) Dr. Thistlewaite noted that Claimant's examinations

were essentially normal with good eye contact and rapport, broad affect, euthymic mood, normal

psychomotor activity, grossly intact cognitive functioning, and no psychotic symptoms. (Id.)

Claimant reported that he did not experience any side effects from the Effexor. (Id.) Dr. Thistlewaite

noted that Claimant "generally appears fairly stable" and that his depression and GAD was relatively

stable. (Id.)

Dr. Thistlewaite completed a Mental Medical Assessment of Ability to Do Work-Related

Activities on January 31, 2005, in which he opined that Claimant retained fair ability to follow work

rules, relate to co-workers, use judgment, function independently, behave in an emotionally stable

manner, relate predictably in social situations, demonstrate reliability, and understand, remember,

and carry out simple and detailed job instructions. (Tr. at 639-40.) He opined that Claimant had poor

ability to deal with the public, interact with supervisors, deal with work stresses, maintain attention

and concentration, and understand, remember, and carry out complex job instructions. (Id.)

The ALJ reviewed and summarized this evidence in his opinion. (Tr. at 309-10.) The ALJ

determined that Dr. Thistlewaite's January 31, 2005, assessment was not consistent with his own

15

progress notes which "do not indicate objective findings of significant symptomology." (Tr. at 310.) The ALJ noted that Claimant's depression was generally stable, that his mood had improved, and that his medication produced no side effects. (Id.) The ALJ thus determined that Dr. Thistlewaite's assessment was "influenced by unverifiable complaints of the claimant." (Id.) In discrediting Dr. Thistlewaite's opinions, the ALJ credited the opinions of the state agency medical and psychological consultants. (Tr. at 206-26, 310, 575-89.) These state agency sources completed Psychiatric Review Technique forms on September 28, 2001, November 19, 2001, and January 30, 2004, in which they opined that Claimant had non-severe affective (depression) and anxiety (GAD) disorders. (Tr. at 209, 211, 578, 580, 627, 629.) These sources further opined that Claimant had only mild limitations in his activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation. (Tr. at 216, 585, 634.) The ALJ adopted the state agency source opinions and concluded that Claimant's mental conditions were not severe. (Tr. at 309-11.) The ALJ further determined that Claimant experienced only mild functional limitations in his activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with only one or two episodes of decompensation. (Tr. at 310.)

Upon a careful review of the evidence of record, the undersigned finds that the substantial evidence of record does not support Dr. Thistlewaite's January 31, 2005, assessment. Dr. Thistlewaite's progress notes clearly indicate that Claimant reported doing well, that his mood had improved, that he experienced no side effects from his medication, and that as of July 21, 2004, both his depression and anxiety were relatively stable. The state agency source opinions more accurately reflect Claimant's reports and Dr. Thistlewaite's findings as stated in Dr. Thistlewaite's progress notes. Accordingly, Claimant's argument in this regard is without merit.

2. Pain and Credibility Assessment.

16

Claimant next argues that the ALJ erred in finding that his testimony was less than credible. (Pl.'s Br. at 8-9.) The Commissioner asserts that the ALJ credited Claimant's subjective complaints by limiting him to a reduced range of unskilled, sedentary work. (Def.'s Br. at 24-27.) The Commissioner further asserts that Claimant's allegations alone will not establish his disability, and therefore, that his argument is without merit. (Id.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the

allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final

19

responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. §
404.1527(e)(2) (2004). In determining disability, the ALJ must consider the medical source opinions
"together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

The ALJ noted the requirements of the applicable law and Regulations with regard to
assessing pain, symptoms, and credibility. (Tr. at 313.) Having resolved all doubts in Claimant's
favor, the ALJ acknowledged, with regard to the threshold test, that Claimant "produced evidence
of impairments that could reasonably be expected to cause the type of pain he alleges." (Tr. at 313.)
Regarding the second step, the ALJ considered the intensity and persistence of Claimant's alleged
symptoms and complaints of pain, and the extent to which they affected his ability to work. (Id.) The
ALJ concluded that the Claimant's complaints suggested a greater severity of impairment than could
be shown by the record as a whole. (Tr. at 313-14.)

The ALJ noted Claimant's complaints of daily pain in his back, neck, and knees, as well as
his poor liver functioning, pulmonary problems, and lack of energy. (Tr. at 313.) The ALJ further
noted that Claimant testified that due to the pain, he could stand only ten to fifteen minutes on a hard
surface, could walk only fifteen minutes without resting, and that he could not lift his arms above his
head or carry a gallon of mild. (Id.) Claimant also testified that he had sleep apnea for which he used
a machine at night. (Id.)

In considering the factors under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), the ALJ
found that Claimant's reported symptoms appeared "magnified in light of the objective medical
findings." (Id.) As discussed above, the objective medical evidence of record did not support the
severity of pain and resulting limitations as reported by Claimant. The ALJ further found that other
evidence of record did not support Claimant's complaints of pain. (Tr. at 314.) Specifically, the ALJ
noted that although Claimant testified to "significantly limited activities of daily living," the medical
record did not "support such severe limitations." (Id.) At the February 15, 2005, administrative

20

hearing, Claimant testified that after he wakes up every morning, he fixes coffee, watches television, and then lies down in the afternoon. (Tr. at 340.) At the May 20, 2002, hearing, Claimant testified that on a daily basis he watches television until his back and neck hurt and occasionally drives his wife to the store. (Tr. at 280.) He testified that his wife does all the cooking, cleaning, shopping, and handling of the finances. (Tr. at 282.) The ALJ noted that Claimant reported to Gloria F. Anderson, R.N., on April 19, 2002, with regard to her Permanent Total Disability Rehabilitation Evaluation, that he went to the YMCA daily to shoot basketball and work out on the treadmill and stair stepper. (Tr. at 233, 314.) At the May 20, 2002, hearing however, Claimant explained that if he used the stationary bicycle too long, his knees would swell, and that he could not lift weights due to his neck pain. (Tr. At 281.) He said that the only activity he could do was to use the hot tub. (Id.) Despite Claimant's reported restricted daily activities, the ALJ found that the medical record did not support the severity of his alleged limitations. (Tr. at 313-14.) The ALJ noted that Claimant took prescribed medications and over-the-counter medications which sometimes relieved his pain but affected his liver. (Tr. at 314.)

Based on the foregoing, the undersigned finds that Claimant's alleged symptoms and pain and the limitations therefrom are not supported by the objective medical evidence of record. Although Claimant repeatedly complained of pain to his treating physician, the medical record does not contain any objective evidence that corroborates the extent of his alleged limitations. The ALJ credited Claimant's subjective complaints to the extent that he is capable of performing a significant range of sedentary work, with physical limitations on overhead reaching, pushing/pulling, performing up-and-down movements of the neck, climbing, balancing, stooping, kneeling, crawling, fingering, and avoiding any exposure to vibration and hazardous work sites. (Tr. at 314-15.) Although the ALJ determined that Claimant could lift twenty pound occasionally and ten pounds frequently, he found that Claimant's nonexertional limitations eroded his ability to perform light work. (Tr. at 317.) Based

21

on the VE's testimony, the ALJ also limited Claimant to performing jobs at the sedentary exertional level, i.e., clerk, surveillance system monitor, and order clerk. (Tr. at 315.) Regarding Claimant's mental capabilities, the ALJ limited Claimant from performing work in a stressful environment within large crowds. (Tr. at 314.)

Upon a careful review of the record, the undersigned finds that the ALJ's determination that Claimant's statements respecting his pain/symptoms were not totally credible is supported by substantial evidence. The ALJ's analysis of Claimant's pain and credibility was proper and in accordance with the applicable law and Regulations. The evidence of record indicates, as the ALJ found, that Claimant's allegations of pain and other symptoms are not as debilitating as he contends. (Tr. at 313-14.) The ALJ found that Claimant could perform sedentary work with specific limitations which accommodate Claimant's symptoms and complaints of pain. (Tr. at 314.) Therefore, the ALJ took into account most of Claimant's symptoms in assessing his residual functional capacity. The ALJ's determination on Claimant's pain and credibility is supported by substantial evidence and Claimant's argument is without merit.

3. Vocational Expert's Testimony.

Finally, Claimant argues that the ALJ erred in not relying on the VE's testimony regarding the physical and mental assessments of Claimant's treating physicians. (Pl.'s Br. at 9-10.) The Commissioner asserts that the ALJ discredited the assessments of Claimant's treating physicians, and therefore, was not obligated to regard that portion of the VE's testimony. (Def.'s Br. at 27-29.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the

22

necessary level of familiarity." Id. at 51; see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir.

1993) (stating that "in questioning a vocational expert in a social security disability hearing, the ALJ

must propound hypothetical questions to the expert that are based upon a consideration of all relevant

evidence of record on the Claimant's impairments."). Nevertheless, while questions posed to the

vocational expert must fairly set out all of claimant's impairments, the questions need only reflect

those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276

(3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must

include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th

Cir. 1983).

In his hypothetical questions to the VE during the February 15, 2005, administrative hearing,

the ALJ included all of Claimant's impairments that were supported by the record. (Tr. at 348-51.)

The ALJ first asked whether a person of Claimant's age, education, past relevant work experience,

and residual functional capacity, with the following limitations, could perform any work:

> [T]his one would limit his hypothetical person to lifting no more than 20 pounds
> occasionally, 10 frequently. He needs to avoid frequent overhead reaching with the
> arms. Avoid frequent pushing and pulling with the arms. Lateral up and down
> movements of the head and neck should only be done occasionally. The following
> exertional - - or posturals are occasionally: climbing ramps and stairs, balancing,
> stooping and crouching. These are nevers: climbing any kind of ladder or ropes,
> kneeling or crawling, due to the knees principally. Needs to avoid vibrations as well
> as hazardous work sites. He can perform an occasional fingering with the left non-
> dominant hand. He does need work that's low in stress, it would be best if he would
> avoid large crowds in the work place.

(Tr. at 348.) The VE responded that he could not identify any jobs at the light exertional level, but

that such a person could perform work as a clerk, surveillance systems monitor, or order clerk at the

sedentary exertional level. (Tr. at 349.) In his second hypothetical question, the ALJ asked the VE

to limit such a person to simple, routine work due to attention and concentration problems. (Id.) The

VE responded that such a person was capable of performing the sedentary positions already

23

identified. (Id.) Finally, the ALJ asked the VE to consider only the limitations as indicated in the assessments of Dr. Franco and Dr. Thistlewaite. (Tr. at 350.) The VE responded that Dr. Franco's assessment precluded any work as his limitations fell below the sedentary exertional level of work. (Id.) The VE similarly asserted that Dr. Thistlewaite's assessment precludes any work due to his finding that Claimant had poor ability to make occupational adjustments. (Id.)

The ALJ's first hypothetical question took into account Claimant's impairments which were supported by the record. The ALJ's final hypothetical question reflected the impairments and limitations as assessed by Claimant's treating physicians. The Court has already considered and upheld the ALJ's findings that Dr. Franco's and Dr. Thistlewaite's assessments were not supported by the medical evidence of record. Accordingly, the ALJ correctly did not rely on the VE's testimony in this regard.

Based upon a review of the record, the Court finds that the ALJ's hypothetical questions to the VE and his reliance on the VE's testimony was proper, in accordance with the applicable law and Regulations, and is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Doc. No. 9.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: July 30, 2007.

R. Clarke VanDervort
United States Magistrate Judge

24